### Morgan v. Doe.

*J. Seigmund Levin,* for plaintiff; *Frederick H. Spotts,* for defendant.

STERN, P. J., March 1, 1932.—The plaintiff's statement of claim alleges: "That on many occasions prior to and during 1929 the above-named defendant requested the plaintiff to bring to the defendant's office such clients and such legal business as the plaintiff was able to procure, and orally agreed that he, the said defendant, would pay to the plaintiff herein a sum equal to fifty per cent. (50%) of any earnings and fees secured by the defendant from and through such clients and law business as the plaintiff might influence and bring to the office of the defendant, directly or indirectly."

The statement of claim further alleges that through the influence and work of the plaintiff the defendant was retained in four certain matters therein specified, and he asks for an accounting from the defendant of all moneys due to the plaintiff under the agreement between the parties.

The defendant has filed an affidavit of defense raising questions of law.

There is no case in Pennsylvania, as far as we are advised, which rules the question as to whether or not such an agreement is enforceable. Diverse views in regard to it have been taken in other jurisdictions.

In our opinion, the agreement is contrary to public policy. The people are concerned in the integrity, responsibility and ethical sense of the legal profession, because upon lawyers, primarily, is dependent the administration of justice. Any practice by which "runners" or agents are employed to procure business for members of the bar degrades and stultifies the profession and reduces it to the level of hucksters in the market place. Lawyers may attract clients but they must not seek them by methods properly employed in the business world. This is not merely a canon of good taste, but a rule that reaches deeply into the heart of legal ethics, for a violation of it is apt to breed objectionable practices. At common law it was an indictable offense to be a common barrator, and observation of current conditions is convincing that the practice of employing laymen to procure business for lawyers is a prolific source of barratry and, therefore, contrary to the public weal. More-

over, laymen are not bound by any professional oath or discipline, nor by the exalted sense of honor which comes from membership in a fraternity whose aim is the lofty one of the pursuit of justice, and, when they have a contingent interest in the spoils of litigation, they are more apt to suborn perjured testimony and to instigate corruption.

The Courts of Common Pleas of Philadelphia County recently adopted rules prohibiting the employment of "runners" in negligence cases, and the only reason why a similar injunction was not laid upon such practice in assumpsit cases was that the evil had not manifested itself in such litigation to any appreciable extent.

We believe that the reasoning in the case of Irwin v. Curie, 171 N. Y. 409, is ill-considered and fallacious. We hold that any contract by an attorney to pay part of his fee to a layman in consideration of the latter procuring the employment of the attorney by a litigant is against public policy and void. We, therefore, sustain the affidavit of defense raising questions of law and enter judgment for the defendant.